| | |
|---|---|
| 1 | Mia Farber (SBN 131467) |
|   | Mia.Farber@jacksonlewis.com |
| 2 | Talya Z. Friedman (SBN 216158 |
|   | Talya.Friedman@jacksonlewis.com |
| 3 | Eric J. Gitig (SBN 307547) |
|   | Eric.Gitig@jacksonlewis.com |
| 4 | JACKSON LEWIS P.C. |
|   | 725 South Figueroa Street, Suite 2500 |
| 5 | Los Angeles, California  90017-5408 |
|   | Telephone:  (213) 689-0404 |
| 6 | Facsimile:  (213) 689-0430 |
| 7 | Attorneys for Defendant |
|   | ADECCO USA, INC. |
| 8 | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| KENNETH TAYLOR, on behalf of himself and others similarly situated, | Case No.:  2:20-CV-4931 |
| Plaintiff, | **DEFENDANT ADECCO USA, INC.'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)** |
| vs. | |
| MICHAEL KORS, INC.; MICHAEL KORS (USA), INC.; MICHAEL KORS STORES (CALIFORNIA), INC.; MICHAEL KORS RETAIL, INC.; ADECCO USA, INC.; and DOES 1 to 100, Inclusive, | |
| Defendants. | (Filed concurrently with Declarations of Mia Farber and Megan Guyton; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement) |

**TO THE HONORABLE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant ADECCO USA, INC. ("Adecco") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles based on the Class Action Fairness Act of 2005 ("CAFA"). Adecco submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff KENNETH TAYLOR ("Plaintiff") and without conceding Plaintiff has pled claims upon which relief can be granted.  This removal is based on the following grounds:

1.      On March 16, 2020, Plaintiff filed an unverified Complaint for Damages against Adecco, Michael Kors, Inc., Michael Kors (USA), Inc., Michael Kors Stores (California), Inc., and Michael Kors Retail, Inc. (collectively, "Defendants") in the Superior Court of the State of California for the County of Los Angeles entitled *KENNETH TAYLOR, on behalf of himself and others similarly situated, PLAINTIFF, vs. MICHAEL KORS, INC.; MICHAEL KORS (USA), INC.; MICHAEL KORS STORES (CALIFORNIA), INC.; MICHAEL KORS RETAIL, INC; ADECCO USA, INC.; and DOES 1 through 100, Inclusive, DEFENDANTS*, Case No. 20STCV10276, which sets forth the following seven causes of action: (1) failure to pay wages for all time worked at minimum wage in violation of Labor Code sections 1194 and 1197; (2) failure to pay proper overtime wages for daily overtime hours worked and all hours worked in violation of Labor Code sections 510, 1194, and 1198; (3) failure to authorize or permit meal periods in violation of Labor Code sections 512 and 226.7; (4) failure to authorize or permit rest periods in violation of Labor Code section 226.7; (5) failure to provide complete and accurate wage statements in violation of Labor Code section 226; (6) failure to timely pay all wages earned and final paychecks due at time of separation of employment in violation of Labor Code sections 201, 202, and 203; and (7) unfair business practices in violation of Business and Professions Code section 17200, et seq. (the "Complaint"). As stated in paragraphs 2 and 39 therein, the Complaint is brought as a class action on behalf of Plaintiff and "[a]ll current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class."

2.      Adecco first received Plaintiff's Summons and Complaint and Civil Case Cover Sheet when it was served on May 4, 2020. (Declaration of Mia Farber ("Farber Decl.") at ¶ 2.) True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and related court documents received by Adecco on May 5, 2020 are attached as **Exhibit "A"** to the Farber Declaration.

3. On May 14, 2020, Adecco was served with Plaintiff's Proofs of Service of Summons. (Id. at ¶ 3.) True and correct copies of Plaintiff's Proofs of Service of Summons are attached as **Exhibit "B"** to the Farber Declaration.

4. On June 2 and 3, 2020, Adecco attempted to file a Notice of Related Cases in the Los Angeles County Superior Court in both the instant action (Case No. 20STCV10276) and in a second action filed by Plaintiff in Los Angeles County Superior Court, on May 22, 2020, entitled *KENNETH TAYLOR, on behalf of himself and all aggrieved California-based non-exempt employees, PLAINTIFF, vs. MICHAEL KORS, INC.; MICHAEL KORS (USA), INC.; MICHAEL KORS STORES (CALIFORNIA), INC.; MICHAEL KORS RETAIL, INC.; ADECCO USA, INC.; and DOES 1 to 100, Inclusive, Defendants*, Case No. 20STCV19614. (Id. at ¶ 5.) Adecco's Notices of Related Cases advised the Superior Court that the two actions are related because they: (i) involve the same parties and are based on the same or similar claims; (ii) arise from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact; and (iii) are likely for other reasons to require substantial duplication of judicial resources heard by different judges. (Id.) In that regard, Plaintiff's initial Complaint (Case No. 20STCV10276) asserts seven causes of action – six based on alleged violations of the California Labor Code and one based on alleged unfair business practices – on behalf of a putative class of Defendants' non-exempt California employees, and Plaintiff's second Complaint (Case No. 20STCV19614) asserts a single cause of action to recover civil penalties pursuant to the California Private Attorneys General Act of 2004, California Labor Code §§ 2698, *et seq.* ("PAGA") on behalf of the same Defendants' non-exempt employees and based on nearly the same underlying alleged violations of the California Code. (Id.) Adecco was unable to file the Notice of Related Cases in the instant action (Case No. 20STCV10276) due to the unexpected closure of the courthouse but was able to file the Notice of Related Cases in the second action (Case No. 20STCV19614). (Id.) True and correct copies of Adecco's Notices of Related Cases are attached as **Exhibit "C"** to the Mia

Farber Declaration.[1]  Based on the relationship between Plaintiff's two actions, Adecco respectfully requests for this Court to exercise supplemental jurisdiction over Plaintiff's second Complaint and remove the PAGA action to this Court.

5. As of the date of this Notice of Removal, **Exhibits "A"** and **"B"** to the Farber Declaration constitute all of the pleadings received or filed by Adecco in this matter.  (Id. at ¶ 6.)

## TIMELINESS OF REMOVAL

6. This Notice of Removal has been filed within thirty (30) days after Adecco was first served with a copy of Plaintiff's Summons and Complaint on May 5, 2020. (Id. at ¶ 2.) Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## VENUE IS PROPER

7. This action was filed in the Superior Court in and for the County of Los Angeles.  Thus, venue of this action properly lies in the United States District Court for the Central District of California – Western Division pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a).  Venue of this action is also proper pursuant to 28 U.S.C. § 1391, providing that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides.  (Farber Decl. at ¶ 2, **Exhibit "A"** ["Complaint"] at ¶¶ 2, 6-10; Declaration of Megan Guyton ("Guyton Decl.") at ¶ 5.)

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT

8. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

---

[1] Also on June 2 and 3, 2020, Adecco attempted to file an Answer to the Complaint in the Los Angeles County Superior Court, but was unable to complete the filing due to the unexpected closure of the courthouse. (Farber Decl. at ¶ 4.)

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332 (d)(5).

10. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from one of the Defendants. *See* 28 U.S.C. §§ 1332(d) and 1453.[2] Furthermore, none of the Defendants are a State, State official, or other governmental entity.

**A.  The Putative Class Contains More Than 100 Members.**

11. CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

12. Here, Adecco's records identify in excess of 1,500 individuals who have been employed as non-exempt employees in the State of California between March 16, 2016 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between March 16, 2016 and the present is referred to herein as the "Putative Class Period"). (Guyton Decl. at ¶ 7.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.  None Of The Named Defendants Are Government Entities.**

13. Adecco is not a State, a State official, or any other governmental entity. (Guyton Decl. at ¶ 3.)

---

[2] Adecco does not require the consent of the remaining Defendants to properly remove this action. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 … by any defendant without the consent of all defendants.").

14. Upon information and belief, none of the remaining Defendants – Michael Kors, Inc., Michael Kors (USA), Inc., Michael Kors Stores (California), Inc., and Michael Kors Retail, Inc. – are a State, a State official, or any other governmental entity.

**C.  Minimal Diversity Is Satisfied Under CAFA.**

15. The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

16. Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

17. For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also*

*Francisco v. Emeritus Corp.* (C.D.Cal. June 12, 2017, No. CV 17-02871-BRO (SSx)) 2017 U.S.Dist.LEXIS 90131, at *10.) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

18. Adecco is informed and believes that Plaintiff, at the time this action was commenced, and still is, a resident and citizen of the State of California. (Guyton Decl. at ¶ 5.) Furthermore, Plaintiff alleges that he was employed by Defendants in Los Angeles County. (Complaint at ¶¶ 2, 5-10.) Accordingly, Plaintiff is a citizen of the State of California for purposes of removal under CAFA.

19. For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state.

20. At the time Plaintiff filed the Complaint and presently, Adecco has been a corporation organized under the laws of the State of Delaware. (Guyton Decl. at ¶ 4.) At all relevant times, Adecco's company headquarters, and thus its principal place of business, has been in the State of Florida. (Id.) The State of Florida is where Adecco's high-level officers, including its Chief Executive Officer, direct, control, and coordinate the company's activities. (Id.) Adecco's executive operations are managed from the State of Florida, including, but not limited to, operations relating to administering company policies and procedures, legal affairs, and general business operations. (Id.) None of Adecco's executive officers reside in the State of California. (Id.) Accordingly, for purposes of removal under CAFA, Adecco is citizen of the States of Delaware and Florida and is not a citizen of the State of California.

21. Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while at least one Defendant (Adecco) was – and still is – a citizen of the Delaware and Florida.[3] 28 U.S.C. § 1332(d)(2).

**D.  The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[4]**

22. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . . .").

23. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth*

---

[3] The citizenship of the remaining Defendants – Michael Kors, Inc., Michael Kors (USA), Inc., Michael Kors Stores (California), Inc., Michael Kors Retail, Inc., and the Doe defendants – are immaterial for the purposes of determining whether CAFA's minimal diversity requirements are satisfied. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices."); *see also* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

[4] Adecco denies each and every allegation set forth by Plaintiff in the Complaint and deny that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. Adecco also denies that this action can proceed as a class action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

*Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

24. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

25. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.

26. Moreover, if a plaintiff asserts statutory violations, the court must assume the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot*

*Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

27. While Plaintiff does not allege a specific amount in damages, his Complaint was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class. As such, Plaintiff is claiming the monetary damages and restitution he is seeking exceeds the $25,000 minimum jurisdiction limits of the California Superior Court,[5] which is confirmed by the fact that he designated his case as "Unlimited (Amount demanded exceeds $25,000)" on his Civil Case Cover Sheet. (Farber Decl. at ¶ 2, **Exhibit "A"** [Civil Case Cover Sheet].) Plaintiff further contends that his "claims are typical of the claims of the class members" and that Defendants maintained policies or practices that universally subjected Plaintiff and Putative Class Members to damages. (Complaint at ¶ 20, 22, 28, 30, 32, 34, 40, 44, 61, 63, 69, 71, 79, 86, 87, 94.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member,

---

[5] *See* California Code of Civil Procedure §§ 86(a) and 88.

which places over $37,500,000 ($25,000 x 1,500 Putative Class Members) in controversy. (Guyton Decl. at ¶ 7.) *See Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

28. In the alternative, and without admitting Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[6] also conservatively places an aggregate amount in controversy exceeding $5,155,000, exclusive of attorneys' fees, interest, and costs, as follows:

    a. <u>First Cause of Action – Failure to Pay Minimum Wage</u>: Plaintiff alleges "Plaintiff and similarly situated employees worked more minutes per shift than Defendants credited them with having worked" because "he and other similarly situated employees were required to go through security checks and/or bag checks after clocking out for meal periods, during rest periods, and at the end of their shift without being paid for that time." (Complaint at ¶¶ 19, 44-46.) Plaintiff further asserts that this "policy, practice, and/or procedure resulted in time *each day* in which Plaintiff and similarly situated employees are subject to the control of employers' [*sic*] without being compensated for that time," thereby entitling Plaintiffs and Putative Class Members to recover the amount of any unpaid minimum wage plus liquidated damages in the amount of their unpaid minimum wage. (Id. at ¶¶ 20, 21, 47 [emphasis added].) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of minimum wages per week for all Putative Class Members, which would place over $500,000 in controversy in connection with his minimum

---

[6] *See e.g. Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

wage claim ($10.00 hourly rate[7] x 1 hour per week x 25,000 workweeks[8] plus an equal amount in liquidated damages). (Guyton Decl. at ¶ 8.)

      b.    <u>Second Cause of Action – Failure to Pay Overtime Wages</u>: Plaintiff claims that the alleged uncompensated off-the-clock time described above "resulted in time during *each workday* which Plaintiff and similarly situated employees were under control of Defendants, but were not compensated at their overtime rate of pay when they worked more than eight hours in a day or 40 hours in a week." (Complaint at ¶¶ 22, 24-26, 53-57 [emphasis added].) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of overtime wages per week for all Putative Class Members, which would place over $375,000 in controversy in connection with his overtime wage claim ($15.00 overtime rate [$10.00 x 1.5] x 1 hour per week x 25,000 workweeks). (Guyton Decl. at ¶ 8.)

      c.    <u>Third Cause of Action – Failure to Provide Meal Periods</u>: Plaintiff alleges that he "and similarly situated employees regularly worked shifts of more than 5 hours [but] were not given a duty-free meal period because Defendants maintain a policy, practice, and/or procedure whereby Defendants require Plaintiff and similarly situated employees to go through security checks and/or bag checks after clocking out for meal periods." (Complaint at ¶¶ 28, 61.) Plaintiff further asserts "Defendants also regularly fail to pay Plaintiff and similarly situated employees one hour of pay at their regular rate of pay for each workday [they] did not receive all legally compliant meal periods," thereby entitling Plaintiff and Putative Class Members to one hour of additional pay at the regular rate of compensation for each workday that the proper meal period was not provided. (Id. at ¶¶ 29, 62-65.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per week for all Putative Class Members, which would place over

---

[7]     For purposes of this Notice of Removal, Adecco conservatively utilized an hourly rate of $10.00 – the lowest applicable minimum wage rate during the Putative Class Period – for all calculations.

[8]     Adecco's records identify in excess of 25,000 workweeks worked by Putative Class Members during the Putative Class Period (Guyton Decl. at ¶ 8), but for purposes of removal Adecco conservatively presumes 100,000 workweeks to show that the $5,000,000 threshold is easily met.

$250,000 in controversy in connection with his meal period claim ($10.00 hourly rate x 1 meal period per week x 25,000 workweeks). (Guyton Decl. at ¶ 8.)

    d.    <u>Fourth Cause of Action – Failure to Provide Rest Breaks</u>: Plaintiff alleges that he "and similarly situated employees regularly worked shifts of more than 3.5 hours [but] were not given [ ] uninterrupted 10-minute rest period[s] … because Defendants' policy required Plaintiff and similarly situated employees to go through security checks and/or bag checks during their rest breaks." (Complaint at ¶¶ 32, 69.) Plaintiff further asserts "Defendants also regularly fail to pay Plaintiff and similarly situated employees one hour of pay at their regular rate of pay for each workday [they] did not receive all timely and legally compliant rest periods," thereby entitling Plaintiff and Putative Class Members to one hour of additional pay at the regular rate of compensation for each workday that the proper meal period was not provided (Id. at ¶¶ 33, 34, 70-73.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per week for all Putative Class Members, which would place over $250,000 in controversy in connection with his rest period claim ($10.00 hourly rate x 1 rest period per week x 25,000 workweeks). (Guyton Decl. at ¶ 8.)

    e.    <u>Fifth Cause of Action – Failure to Provide Accurate Wage Statements</u>: Plaintiff alleges "Defendants failed to provide accurate wage and hour statements to Plaintiff and similarly situated employees" because – for the reasons discussed above – wage statements provided to Putative Class Members "did not reflect all of the employees' earnings." (Complaint at ¶¶ 36, 77-79.) Given these purported violations, Plaintiff claims he and Putative Class Members "are entitled to recover fifty (50) dollars for the initial pay period within the applicable limitations period in which a violation … occurred and one hundred dollars for each violation … in a subsequent pay period, not to exceed an aggregate penalty of four thousand ($4,000) dollars per employee." (Id. at ¶¶ 80-82.) During the one-year statute of limitations period mandated under Labor Code section 226 (*i.e.*, March 16, 2019 to the present), Adecco has issued in excess of 9,500 bi-weekly wage statements to over 650 Putative Class Members. (Guyton Decl. at ¶ 9.) Thus, based on the allegations

in the Complaint, it is plausible that Plaintiff has placed over $900,000 in controversy in connection with his wage statement claim ($50 per first wage statement per Putative Class Member plus $100 for each subsequent wage statements, up to a maximum of $4,000 per Putative Class Member).  *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal. May 9, 2018) (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

    f. <u>Sixth Cause of Action – Failure to Pay All Wages Due at Time of Termination/Resignation</u>: Plaintiff asserts that, "[b]ecause Defendants failed to pay Plaintiff and similarly situated employees all their earned wages [for the reasons discussed above], Defendants willfully failed to pay those employees timely after each employee's termination and/or resignation."  (Complaint at ¶ 38, 86, 87.)  Given these purported violations, Plaintiff claims he and Putative Class Members "are entitled to continuation of their wages, from the day their earned and unpaid wages were due upon separation of employment until paid, up to a maximum of 30 days."  (Id. at ¶¶ 89, 90.)  During the applicable three-year statute of limitations period (*i.e.*, March 16, 2017 to the present), over 1,200 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendants.  (Guyton Decl. at ¶ 7.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $2,880,000 in controversy in connection with his claim for waiting time penalties (1,200 Putative Class Members x $10.00 hourly rate x 8 hours x 30 days).

29. Plaintiff also seeks an unspecified amount of attorneys' fees in his Complaint, which the Court should consider and include in the amount in controversy. (Complaint at ¶¶ 1, 47, 56, 57, 81, 82, 92, 99, Prayer for Relief.) *See, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

30. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart*

*Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

31. The Court should therefore consider attorneys' fees of at least $1,288,750, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 27 above. *See, e.g., Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

32. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (**$6,443,750**) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

33. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

34. Based on the foregoing, Adecco hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings. Adecco also respectfully requests for this Court to exercise supplemental jurisdiction over Plaintiff's second Complaint filed in the Los Angeles County Superior Court (Case No. 20STCV19614) and similarly remove Plaintiff's second Complaint to this Court.

Dated: June 3, 2010

Respectfully submitted,

JACKSON LEWIS P.C.

By: */s/ Mia Farber*
Mia Farber
Talya Z. Friedman
Eric J. Gitig

Attorneys for Defendant
ADECCO USA, INC.

4838-7902-6619, v. 2